IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | * |
| GARY BURBOL, SR., | * CHAPTER 7 |
|     Debtor | * |
| | * CASE NO. 1:09-bk-08317MDF |
| ROBERTA A. DeANGELIS, | * |
| UNITED STATES TRUSTEE, | * |
|     Movant | * |
| | * |
|     v. | * |
| | * |
| GARY BURBOL, SR., | * |
|     Respondent | * |
| | * |

## OPINION

The United States Trustee (the "UST") has moved under 11 U.S.C. § 707(b)(3) to dismiss the bankruptcy petition of Gary Burbol ("Debtor") on the grounds that, given the totality of his financial circumstances, allowing this case to proceed under Chapter 7 would be an abuse of that chapter. For the reasons discussed below, I will grant the UST's motion.

### I. Factual Findings and Procedural History

Since March 2008, Debtor has been self-employed as a truck driver hauling freight for a shipping company identified as "Triple Crown." He currently resides in Dillsburg, Pennsylvania, along with his twenty-seven year-old daughter, Emmylou, and her two minor children. He and his ex-wife share custody of a son who was seventeen years of age on the date that Debtor's bankruptcy petition was filed.[1]

Emmylou and her children began to reside with Debtor in November 2009, and he provides them with basic needs such as food and clothing. Emmylou did not graduate from high

---

[1] Debtor's son attained the age of majority in November 2010, while this matter was pending.

school and is not employed. She does not receive food stamps or any form of government-sponsored cash assistance. Her children's respective fathers occasionally give her money for the children's support, but these meager and sporadic payments are not required by a court order.[2]

Debtor pays his ex-wife $600 per month as child support for their son pursuant to an agreement between the parties. His obligation under this agreement will end in June 2011 when his son graduates from high school. However, Debtor intends to continue to make the same payment directly to his son while he attends college.

Debtor filed his bankruptcy petition on October 25, 2009 seeking to discharge $85,333 in unsecured, non-priority debt. Included in his petition was the requisite Statement of Currently Monthly Income and Means Test Calculation ("Means Test form"), which showed monthly gross income of $5042.76 against allowed deductions of $5135.00, leaving a monthly budget deficit of ($92.24). The income and expense amounts listed on the schedules (Schedules I and J) filed with his petition differed significantly from the amounts for the same categories on the Means Test form. The schedules report gross income of $5583.59 and expenses of $4729.00, leaving a monthly surplus of $854.59. Therefore, while the Means Test form suggests that Debtor has no disposable monthly income, Schedules I and J report monthly disposable income of $854.59.

On April 5, 2010, Debtor filed amended Schedules I and J and an amended Means Test form. The amended Means Test form reported gross monthly income of $6325.96 against allowable monthly deductions of $7513.35, leaving a monthly budget deficit of ($1187.39). The

---

[2] Debtor's daughter testified that between November 2009 when she moved into her father's home and July 2010 when this case was tried, she had received $150 from her children's respective fathers.

2

amended schedules, reported monthly income of $6717.01 and monthly expenses of $5910.25, leaving an average of $806.76 per month in disposable income.[3]

The UST filed her Motion on May 26, 2010, alleging that Debtor's monthly disposable income of $806 would be sufficient to enable him to fund a Chapter 13 plan totaling $48,360, an amount equal to 53% of his reported unsecured debt. Based on this ability to fund a hypothetical plan, the UST argues that the case should be dismissed as an abuse of Chapter 7 under 11 U.S.C. § 707(b)(3).[4] Debtor answered the motion, and a hearing was held on July 19, 2010. The matter is ripe for decision.[5]

## II. Discussion

Section 707(b)(3) of title 11 requires a bankruptcy court to dismiss a Chapter 7 case filed by an individual debtor whose debts are primarily consumer debts if "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse" of the Chapter 7 process. 11 U.S.C.A. § 707(b)(3). In the case before me, Debtor is an individual and there is no

---

[3]The Amended Means Test form and Amended Schedule J included Debtor's son and daughter as additional "allowances" on the forms. With an allotment of three persons instead of one, Debtor was able to claim greater monthly expense allowances, as prescribed by the IRS National Standards for Allowable Living Expenses. Thus, the Amended Means Test form shows a "food, clothing and other items" expense of $1152, the IRS allowance for a three-person household, instead of the $526 allowance for a one-person household.

[4]The motion also invoked 11 U.S.C. § 707(b)(2) as a basis for dismissal. However, in its brief, the UST voluntarily abandoned its case under § 707(b)(2) in favor of proceeding solely under § 707(b)(3).

[5]I have jurisdiction to hear these matters pursuant to 28 U.S.C. §§157 and 1334. A motion to dismiss a Chapter 7 case is a core matter pursuant to 28 U.S.C. §157(b)(2)(A). This Opinion constitutes findings of fact and conclusions of law required to be made by Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

3

dispute that his petition seeks to discharge primarily consumer debts. The matter to be decided in his case is whether granting Chapter 7 relief would be an "abuse" of the bankruptcy process as that term has been defined by the courts.

In filing a motion to dismiss under § 707(b)(3), the UST has the initial burden of establishing a prima facie case that demonstrates abuse of Chapter 7. *In re Hoffman*, 413 B.R. 191, 194 (Bankr. M.D. Pa. 2008). A prima facie case is "'enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor.'" *In re Williams*, 424 B.R. 207, 211 (Bankr. W.D. Va. 2010) (quoting *Black's Law Dictionary* 1189 (8th ed. 1994). The UST may satisfy its prima facie burden by producing evidence that the debtor has "the ability to make a significant payment on his unsecured debt." *In re Hoffman*, 413 B.R. at 194. If the UST produces such evidence, the burden shifts to the debtor to demonstrate that granting relief would not be an abuse of the bankruptcy system. *Id.*

To satisfy its burden in this case, the UST has offered Debtor's Schedules I and J as evidence of an ability to repay debt. The UST asserts that Schedule J on its face shows that Debtor can repay a significant portion of his unsecured debt, even without any adjustment or reduction of the expense figures. In both their original and amended forms, Schedules I and J demonstrate that Debtor has the ability to pay more than $800 per month into a sixty-month Chapter 13 plan. These payments would create a fund of more than $48,000, which would be available to satisfy approximately 53% of his total unsecured debt. I conclude that by producing Debtor's Schedules I and J, which include amounts Debtor does not dispute and which demonstrate that he is able to repay more than half of his unsecured debt, the UST has satisfied its burden of production and shifted the burden of proof to Debtor to show that the filing of his

4

case is not an abuse of Chapter 7. *See In re McUne*, 358 B.R. 397, 398 (Bankr. D. Or. 2006) (rejecting debtor's argument that Congress's enactment of means testing created "separate and distinct financial test" precluding consideration of figures on schedules); *In re Hornung*, 425 B.R. 242, 251 (Bankr. M.D. N.C. 2010) ("Post-BAPCPA, projected disposable income for below median income debtors continues to be determined by examining schedules I and J.").

The testimony and evidence presented by Debtor at trial were not sufficient to rebut the evidence of abuse presented by the UST. At trial, Debtor provided general testimony to the effect that his income as an independent truck driver "has been dropping dramatically" in recent years. (N.T. 14 -15). However, this testimony lacked specificity; he did not state his hourly wage or estimate the number of hours lost, either in total or as a weekly average. Moreover, his Statement of Financial Affairs shows that his income actually *increased* in the two calendar years that preceded his petition.[6] His amended Schedule I, filed on April 5, 2010, shows monthly income of $6717, an amount more than 15% greater than the monthly income of $5583 included on his original Schedule I filed on October 24, 2009. Debtor's vague testimony was not sufficient to rebut the evidence in his amended schedules. Accordingly, the record does not support a finding that Debtor's monthly income is decreasing and would be insufficient to fund a Chapter 13 plan.

As to Debtor's expenses, Debtor and Emmylou provided corroborating testimony at trial that she and her children moved into Debtor's home around Thanksgiving 2009 and that currently she is unable to support her family alone. Debtor filed his amended Schedule J

---

[6] In 2008, his annual income was $68,931, an increase of more than 15% over his 2007 income, $58,014.

approximately five months after his daughter and her children started living with him. Presumably the amended schedule reflects the additional burden to his household expenditures created by her family. As indicated in the Factual Findings, Debtor's amended Schedule J continues to show an ability to repay debt through Chapter 13 even with members added to the household. Accordingly, the increase in household size does not rebut the UST's argument that Debtor has the ability to repay some of his debt. Moreover, it is well established in this District that expenditures for the benefit of persons, such as adult children, whom a debtor is not required to support are not reasonable and necessary expenses. *In re Shores*, at *4 (citing *In re Miller*, 302 B.R. 495, 502 (Bankr. M.D. Pa. 2003) (other citations omitted)). *See also In re Boyd*, 378 B.R. 81 (Bankr. M.D. Pa. 2007) (Judge Thomas), *In re Ponce*, 2009 W.L. 3335871 (Bankr. M.D. Pa.) (Judge Opel) (college tuition and other expenses for adult child not reasonable in context of disposable income calculation under §1325(b)(1)(B)).

      Section 707(b)(3) contains no language establishing a threshold plan payout percentage that should trigger a finding that a Chapter 7 case is *ipso facto* abusive. In other words, it contains no language to the effect that a Chapter 7 case must be dismissed if the schedules show that a debtor could pay a certain percentage of his unsecured debt if the case were one in Chapter 13. Some bankruptcy courts and respected commentators have recommended that, based on language contained in § 707(b)(2), any payout over 25% should be considered "significant" for § 707(b)(3) purposes. "The 25% repayment threshold contained in section 707(b)(2) fixes the level at which debt-paying ability becomes abusive of chapter 7. When judges are required to make determinations of abuse under § 707(b)(3), they should accordingly use the means-test threshold: If a debtor's actual disposable income, determined by the court, is below that

6

threshold, there should be no finding of abuse based on debt-paying ability; if disposable income meets or exceeds the threshold, abuse should be found." *In re Pennington*, 348 B.R. 647, 652 (Bankr. D. Del. 2006) (quoting Hon. Eugene R. Wedoff, *Judicial Discretion to Find Abuse Under § 707(b)(3),* 25 Am. Bankr. Inst. Journal 1 at *52 (April 2006) (internal quotations omitted); *In re Mestemaker*, 259 B.R. 849 (Bankr. N.D. Ohio 2007). *But see In re James*, 414 B.R. 901 (Bankr. S.D. Ga. 2008) (standard set out in § 707(b)(2) represents an "attractive option" for determining abuse under § 707(b)(3), but court declines to adopt it as a "bright line" test).

As indicated above, Debtor's schedules demonstrate that he has the ability to fund a Chapter 13 plan that would pay approximately 50% of his unsecured debt. I find this percentage to be sufficient to support a finding of abuse, especially in light of decisions such as *Pennington*, which have found a 25% payout to be an appropriate threshold. Accordingly, I conclude that Debtor's case should be dismissed under § 707(b)(3).

An order will be entered to dismiss the case unless Debtor files a motion to convert it to one in Chapter 13 within fourteen days of the date of the Order.

**By the Court,**

*Mary D France*
Chief Bankruptcy Judge

Date: March 9, 2011